IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDRE FERGUSON,
        Plaintiff,

v.                                                Civil Action No. _____

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
        Defendant.

## COMPLAINT

**COMES NOW** Plaintiff Andre Ferguson ("Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendant Washington Metropolitan Area Transit Authority ("WMATA" or "Defendant"), alleging as follows:

### INTRODUCTION

1. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended ("Title VII"), seeking relief for race discrimination, color discrimination, and retaliation in employment.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as the unlawful employment practices alleged herein were committed within this judicial district.

## PARTIES

4. Plaintiff Andre Ferguson is an African American male citizen of the United States and a resident of Maryland. At all times relevant to this action, Plaintiff was employed by Defendant WMATA.

5. Defendant WMATA is an interstate compact agency and instrumentality of Maryland, Virginia, and the District of Columbia, with its principal place of business located at 600 5th Street NW, Washington, DC 20001.

## ADMINISTRATIVE PROCEDURES

6. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 3, 2022, within 180 days of the discriminatory acts alleged herein.

7. Plaintiff has exhausted all administrative remedies and all conditions precedent to filing this action have been fulfilled.

## FACTUAL ALLEGATIONS

8. Plaintiff began his employment with WMATA in November 2015 as an Asset Business Systems manager and was later Promoted to Asset Strategy and planning manager in 2018, and lateralled to project manager in 2020.

9. Throughout his employment, Plaintiff performed his job duties in a satisfactory manner and met or exceeded WMATA's legitimate performance expectations.

10. Plaintiff developed the Warranty Department for Rail while an employee with WMATA, exuding his skill and qualification level in this area of responsibility.

11. In or around April 2022, Plaintiff applied for the position of Director, Supply Warranty and Core Management, for which he was fully qualified based on his experience, education, and performance record.

12. The position was initially posted and, according to WMATA's own admission, no candidates, including Richard Janes (White), were found qualified during the first round.

13. Despite being deemed unqualified in the first round, Mr. Janes was later selected for an interview and ultimately hired for the position in the second round of applications, in violation of WMATA's own hiring policies and procedures.

14. WMATA's Corporate Recruiter, Jamie Bellamy-Horne, confirmed that Plaintiff met the qualifications for the position and that his application was forwarded to the hiring manager for consideration.

15. Stephen Spulick, the hiring manager, failed to provide any reason to HR for not interviewing Plaintiff, as required by WMATA's hiring policies and procedures.

16. Mr. Spulick's claim that he was unaware of Plaintiff's race is demonstrably false, as they had worked together previously and had direct interactions, including meetings where Plaintiff led discussions on warranty claims data governance.

17. Plaintiff had previously developed and implemented warranty procedures for WMATA's Rail department and Mr. Spulick's department, demonstrating his capability to transform departments and implement new processes.

18. The selection process was tainted by the involvement of Frank Palmeri, against whom Plaintiff had previously filed an EEOC complaint, and who served as a peer to Mr. Spulick in the selection process.

## CAUSES OF ACTION
### COUNT I - Race Discrimination in Violation of Title VII

19. Plaintiff incorporates by reference paragraphs 1-17 as if fully set forth herein.

20. Title VII of the Civil Rights Act of 1964 prohibits discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. 42 U.S.C. § 2000e-2(a)(1).

21. Pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Plaintiff establishes a prima facie case of discrimination by showing: (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) the position remained open and the employer continued to seek applicants from persons of complainant's qualifications or the position was filled by someone outside the protected class.

22. Plaintiff, as an African American, is a member of a protected class under Title VII.

23. Plaintiff was qualified for the Director, Supply Warranty and Core Management position, as evidenced by: (a) WMATA's Corporate Recruiter Jamie Bellamy-Horne's confirmation of his qualifications; (b) His successful development and implementation of warranty procedures for WMATA's Rail department; (c) His experience as Project Manager in the Rail Quality, Assurance and Warranty Department; (d) His prior role as Acting Director of Asset Management.

24. Despite these qualifications, Plaintiff was denied even an interview for the position, while Richard Janes, a white male previously deemed unqualified, was ultimately selected.

25. WMATA's proffered reasons for not selecting Plaintiff are pretextual, as demonstrated by:(a) The contradiction between initially finding no candidates qualified (including Janes) and later hiring Janes; (b)The violation of WMATA's own hiring policies requiring justification for not interviewing qualified candidates;(c) The demonstrably false claim that Mr. Spulick was unaware of Plaintiff's race; (d) The departure from established hiring procedures, which the D.C. Circuit has recognized as evidence of pretext. *See Johnson v. Interstate Mgmt. Co.*, LLC, 849 F.3d 1093, 1099 (D.C. Cir. 2017).

26. Under *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), Plaintiff may prove discrimination through circumstantial evidence, which he has done through demonstrating WMATA's shifting explanations and departure from standard procedures.

### COUNT II - Color Discrimination in Violation of Title VII

27. Plaintiff incorporates by reference paragraphs 1-25 as if fully set forth herein.

28. Color discrimination, while related to race discrimination, is a distinct claim under Title VII, as recognized in *Walker v. Secretary of the Treasury*, 713 F. Supp. 403 (N.D. Ga. 1989).

29. Plaintiff's dark complexion places him within a protected class for purposes of color discrimination.

30. The same evidence supporting Plaintiff's race discrimination claim also supports his color discrimination claim, as courts have recognized that evidence supporting one claim often

overlaps with the other. See *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 n.5 (4th Cir. 2002).

### COUNT III - Retaliation in Violation of Title VII

31. Plaintiff incorporates by reference paragraphs 1-29 as if fully set forth herein.

32. To establish a prima facie case of retaliation under Title VII, Plaintiff must show that: (1) he engaged in protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. See *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).

33. Plaintiff engaged in protected activity by filing an EEOC complaint against Frank Palmeri in June 2020.

34. The failure to interview and select Plaintiff for the Director position constitutes a materially adverse action that would dissuade a reasonable worker from making or supporting a charge of discrimination. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

35. A causal connection exists between Plaintiff's protected activity and the adverse action, as demonstrated by:(a) Frank Palmeri's involvement in the initial interview process, which WMATA attempted to conceal;(b) The close working relationship between Palmeri and Spulick; (c) The suspicious timing and circumstances surrounding the rejection of Plaintiff's candidacy.

36. Under the Supreme Court's decision in *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), even if Spulick was not directly aware of Plaintiff's protected activity, WMATA can still be liable under a "cat's paw" theory of liability due to Palmeri's influence on the selection process.

37. The temporal proximity between protected activity and adverse action need not be immediate where other evidence supports a retaliatory motive. See *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Award Plaintiff back pay and benefits;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff punitive damages;

E. Award Plaintiff reasonable attorneys' fees and costs;

F. Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

    /s/*Charles Tucker, Jr., Esq.*
Charles Tucker, Jr., Esq. (Bar: 993515)
8181 Professional Pl. Suite 207
Hyattsville, MD 20785
E-mail: charles@tuckerlawgroupllp.com
Tel.: (301) 577-1175