UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**ANDRE FERGUSON, SR.**,

Plaintiff,

v.

**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY**,

Defendant.

Case No. 1:24-cv-3629 (TNM)

---

## MEMORANDUM OPINION

Andre Ferguson is a longtime Washington Metropolitan Area Transit Authority

("WMATA") employee.  WMATA recently rejected his application for a new position within the

company.  Ferguson believes that WMATA passed him over for discriminatory and retaliatory

reasons.  So he sued his employer under Title VII of the Civil Rights Act of 1964.  *See* 42 U.S.C.

§ 2000e *et seq.*

WMATA seeks summary judgment, arguing that Ferguson did not administratively

exhaust his claims and that they also fail on the merits.  Because the Court agrees that Ferguson

failed to exhaust his claims, it need not evaluate WMATA's alternative arguments.  A Title VII

plaintiff must formally bring his grievances to the Equal Employment Opportunity Commission

("EEOC") before coming to federal court.  Although Ferguson did this, he did so too late.  So the

Court will grant WMATA's summary judgment motion.

**I.**

Ferguson has spent more than a decade working at WMATA.  *See* Compl. ¶ 8, ECF No.

1.  During that time, he sought a few internal promotions.  In 2019, after he lost out on one job,

he sued WMATA for discriminatory nonselection.  *See* Def.'s Statement of Mat. Facts

1

("DSMF") ¶ 2, ECF No. 11-1.  WMATA prevailed.  *See Ferguson v. WMATA*, 2024 WL
2052016, at *1 (D.C. Cir. May 8, 2024) (per curiam).  Among the problems with Ferguson's suit
was that he failed to exhaust his claims with the EEOC.  *Ferguson v. WMATA*, 630 F. Supp. 3d
96, 110–12 (D.D.C. 2022).  While that case progressed, Ferguson lateralled within the
organization, becoming a vehicles project manager.  DSMF ¶ 1; Compl. ¶ 8.

He now challenges his failed application for Director, Supplier Warranty & Core
Management.  DSMF ¶ 3; *see* Def.'s Ex. 2 ("Spulick Dep.") at 13:1–14:5, ECF No. 11-2
(describing the position).  WMATA ran two application cycles for the job in 2022.  DSMF ¶ 5–
9.  Ferguson did not apply in the first round, and WMATA ultimately cancelled the job posting.
*See* Def.'s Ex. 5 at 1–2, ECF No. 11-5 (listing applicants); Def.'s Ex. 8 at 1, ECF No. 11-8
(email describing the cancellation).  After adjusting the minimum qualifications for the job,
WMATA solicited applications again.  Def.'s Ex. 9 at 1–2, ECF No. 11-9 (second job posting).
Sixteen people, including Ferguson, applied at that point.  Def.'s Ex. 10 at 1, ECF No. 11-10
(listing applicants).  A few lacked the necessary credentials, but human resources sent resumes
from the rest—including Ferguson's—to the hiring manager, Dr. Steven Spulick.  *See id.*
Spulick then selected four candidates for interviews.  *Id.*  Ferguson was not included.  *Id.*  In
August, WMATA offered the position to Richard Janes.  DSMF ¶ 13; Def.s' Ex. 3 ("Selection
Memo") at 3, ECF No. 11-3.

Ferguson learned about the decision in early September.  *See* Def.'s Ex. 13 ("EEOC
Charge") at 1, ECF No. 11-13.  A rejection email told him that his "background did not align
with the job requirements and business need."  *Id.*  This rankled Ferguson, who felt that he was
more qualified than Janes for the job.  *See* Def.'s Ex. 12 ("Discrimination Compl. Form") at 2,
ECF No. 11-12.  Ferguson, who is black, suspected that WMATA preferred Janes, who is white,

because of race. *See id.* He also feared that the selection committee passed him over in retaliation for his prior lawsuit. *Id.*

In December, Ferguson filed a complaint with WMATA's Equal Employment Opportunity Office. *Id.* at 1. WMATA looked into the complaint and ultimately rejected Ferguson's concerns. *See* Def.'s Ex. 18 ("WMATA Report"), ECF No. 11-18. While WMATA investigated, Ferguson also asked the EEOC for help. *See* Def.'s Reply Ex. 1 ("EEOC Log") at 1–6, ECF No. 17-1. He filed an EEOC charge in March 2023, alleging race-based discrimination, color-based discrimination, and retaliation. EEOC Charge at 1. Neither party supplies the EEOC's findings, but the record suggests that the agency found against Ferguson. *See* EEOC Log at 1 (docketing a "2024-09-30 Notice of Right to Sue").

Ferguson then filed this suit, alleging race-based discrimination, color-based discrimination, and retaliation under Title VII. Compl. ¶¶ 19–37. His discrimination claims turn on the theory that WMATA passed him over in favor of his white colleague. *Id.* ¶¶ 19–30. As for the retaliation claim, Ferguson maintains that a WMATA employee he previously accused of discrimination served on the hiring committee for the job and retaliated against him by rejecting him. *Id.* ¶¶ 31–37. WMATA now seeks summary judgment. Mot., ECF No. 11. That motion is ripe.[1]

## II.

Summary judgment is appropriate if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it could alter the outcome of the suit under the substantive

---

[1] The Court has subject matter jurisdiction because this suit arises under Title VII. *See* 28 U.S.C. § 1331.

law, and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must "identify[] those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (cleaned up). If it does so, the burden shifts to the nonmoving party to point to "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (cleaned up). The nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But the nonmoving party cannot "rest upon mere allegation or denials of [its] pleading." *Id.* at 256 (cleaned up).

Title VII creates a cause of action for some employment discrimination victims. *See* 42 U.S.C. § 2000e-2. But before suing in federal court, the victim must timely exhaust his remedies with the EEOC. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); 42 U.S.C. § 2000e–5(e), (f)(1). "That means filing an administrative charge with the EEOC and allowing the agency time to act on the charge before commencing litigation." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019) (cleaned up). "The exhaustion requirements under Title VII are akin to a statute of limitations." *Gulley v. District of Columbia*, 474 F. Supp. 3d 154, 163 (D.D.C. 2020) (cleaned up).

### III.

Because Ferguson did not timely exhaust his claims, the Court will grant summary judgment to WMATA.

"Before suing under . . . Title VII, an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident." *Oviedo v. WMATA*, 948 F.3d 386, 393 (D.C. Cir. 2020); *see* 42 U.S.C.

4

§ 2000e-5(e)(1).[2]  The clock starts running when the employee learns about the adverse action. *See Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1366 (D.C. Cir. 1998).  If an employee does not file an EEOC charge "within 180 days," his failure to exhaust administrative remedies becomes an affirmative defense for a defendant in any subsequent Title VII suit.  *See Bowden*, 106 F.3d at 437.

Applying those principles here, WMATA wins summary judgment because Ferguson did not file a timely charge.  Ferguson's 180-day filing window began on September 1, 2022.  *See* Opp'n at 3, ECF No. 14; Reply at 1, ECF No. 17.  That is when he learned that WMATA gave Janes the job.  *See* EEOC Charge at 1; *Currier*, 159 F.3d at 1366.  To satisfy § 2000e-5(e)(1), then, he had to file a charge by February 28, 2023.  He did not do so.  It is undisputed that Ferguson filed his charge on March 3, 2023—183 days after he learned that he lost the job.  DSMF ¶ 15; EEOC Charge at 1.[3]

Ferguson nevertheless argues that he satisfied the 180-day requirement because he *initiated* contact with the EEOC before February 28.  *See* Opp'n at 3.  According to Ferguson, the exhaustion clock stopped when he made an initial inquiry with the EEOC on November 3, 2022.  *Id.* at 3–4.  That is wrong.  To start, caselaw and the statute make clear that the "charge" must be filed within 180 days of the unlawful practice.  42 U.S.C. § 2000e-5(e)(1); *see also, e.g.,*

---

[2]  The charge filing deadline extends to 360 days when the victim "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto."  42 U.S.C. § 2000e-5(e)(1).  WMATA is not a "State or local agency" fitting that description.  *See Oviedo*, 948 F.3d at 393 (applying the 180-day time limit to claims against WMATA).  So, as the parties agree, the normal 180-day period applies here.

[3]  Because Ferguson did not contest WMATA's material facts, the Court treats them as admitted. *See* LCvR 7(h)(1); Standing Order ¶ 14(B)(v); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (holding that the "district court properly deemed as admitted the material facts set forth in the [defendant's] . . . statement of material facts not in dispute" when the plaintiff did not comply with procedural rules).

*Oviedo*, 948 F.3d at 393.  And an administrative charge and an EEOC inquiry "are not one in the same."  *Gulley*, 474 F. Supp. 3d at 165; *see also, e.g.*, *Best v. District of Columbia*, 2022 WL 816087, at *4 (D.D.C. Mar. 17, 2022) (collecting cases).  Indeed, EEOC regulations differentiate between "pre-complaint processing," 29 C.F.R. § 1614.105, and charges, *id.* § 1614.106.  The EEOC's website alerts complainants to that same distinction.  *See* EEOC, Filing a Charge of Discrimination, https://perma.cc/X876-26J2 (accessed June 26, 2026) ("A Charge of Discrimination can be completed through our EEOC Public Portal after you submit an online inquiry and we interview you.").

One caveat bears mention, though neither party briefs it and though it does not help Ferguson.  An EEOC "claim need not always arise from the EEOC charge *form*."  *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021).  The agency will sometimes accept a statement as a charge so long as it is sufficiently detailed.  *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 405–07 (2008) (approving EEOC regulations implementing the Age Discrimination in Employment Act that treat a filing as a charge if it "reasonably can be construed to request agency action and appropriate relief on the employee's behalf"); *Haynes*, 924 F.3d at 528 (applying *Holowecki* to Title VII, but concluding that the plaintiff's intake questionnaire was not a charge).  Most commonly this rule comes into play when a plaintiff relies on statements from his intake questionnaire that did not make it into a later charge.  *See, e.g.*, *Haynes*, 924 F.3d at 528.  Ferguson does not even offer that much.  His exhaustion argument relies on an even more preliminary step—his initial EEOC contact.  *See* EEOC, Frequently Asked Questions, https://perma.cc/4HEK-HX5F (accessed July 9, 2026) (explaining that the complaint filing process "begins when you contact the EEOC," that EEOC may then "ask you to complete a questionnaire," and after counseling "[y]ou can then decide whether or

6

not you want to file a formal job discrimination complaint, called a 'Charge of

Discrimination' "). That is not enough.

But even assuming an initial inquiry could be so detailed as to qualify as a charge,

Ferguson "has offered no reason why [the Court] should treat *his* [inquiry] that way." *Haynes*,

924 F.3d at 528. Indeed, Ferguson makes no argument on this front. He simply confuses the

initial inquiry with the charge, citing no authority to support his mistaken insistence that the

inquiry sufficed. *See* Opp'n at 3–4. More, Ferguson has not produced his initial inquiry. *See*

Reply at 2 (noting this absence); *cf. Tapp v. WMATA*, 283 F. Supp. 3d 1, 6–7 (D.D.C. 2017)

(refusing to presume at summary judgment that a Title VII plaintiff "exhausted his

administrative remedies by filing a charge" where the record included no written charge). And

that evidentiary deficiency is especially surprising because the dismissal of Ferguson's claims in

his prior lawsuit for failure to exhaust should have impressed on him the importance of

documenting exhaustion-related steps. *See Ferguson*, 630 F. Supp. 3d at 110–12 (concluding

that Ferguson failed to exhaust some claims and adding that Ferguson failed to offer "any

persuasive reason to excuse his failure to exhaust his administrative remedies").

WMATA's evidence, meanwhile, shows that Ferguson's inquiry could not have been a

charge. An EEOC case history log shows that Ferguson made his inquiry on November 3, 2022.

EEOC Log at 6. His case status "changed from Inquiry submitted to Charge Prepared" on March

3, 2023—the same day Ferguson signed the official charge form. *Id.* at 3; *see* EEOC Charge at

1. Two other entries on that day confirm that the EEOC would have lacked the information to

treat Ferguson's earlier communications as a charge. On March 3, the EEOC added respondent

contact information. EEOC Log at 5; *cf. Featherston v. District of Columbia*, 910 F. Supp. 2d 1,

6 (D.D.C. 2012) (concluding that an intake questionnaire could not be considered a charge

because it "did not sufficiently identify the charged party"). And it logged Ferguson's discrimination and retaliation claims. EEOC Log at 4; *see, e.g.*, *Webster v. Del Toro*, 49 F.4th 562, 567 (D.C. Cir. 2022) (explaining that charge must specify the "unlawful employment practice" at issue). In short, WMATA's evidence confirms that Ferguson's initial inquiry was not a charge in form or function.

## IV.

Having concluded that Ferguson waited until March 3 to file his charge, the Court must grant WMATA's summary judgment motion. Ferguson's 183-delay in filing a charge dooms his claims. *Accord Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 16–17 (D.D.C. 2008) (granting summary judgment against plaintiff for failure to file a timely claim with the EEOC). And this should not surprise Ferguson. After all, his last Title VII lawsuit foundered in part because he made a similar mistake. *See Ferguson*, 630 F. Supp. 3d at 110–12.

For all these reasons, the Court will grant WMATA's summary judgment motion. A separate order will issue.

Dated: July 23, 2026                                   TREVOR N. McFADDEN, U.S.D.J.

8